AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

United States of America
v.
YOLANDA RAMOS

*Defendant(s)*

Case No. 6:25-mj-2100

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 3, 2025 in the county of Orange County in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2 | possession, and aiding and abetting, possession, with intent to distribute cocaine |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*

Charles Scott Archer, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/4/2025 @ 3:39 PM

*Judge's signature*

City and state: Orlando, FL

ROBERT M. NORWAY, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Charles Prescott Archer, a Special Agent of the Federal Bureau of Investigation, Orlando Resident Agency, being duly sworn, depose and state the following:

### BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since June 6, 2021. I am presently assigned to the Orlando Resident Agency, Tampa Field Office. Among my responsibilities as a Special Agent are investigating a variety of criminal and national security matters, including the investigation of violent crimes, narcotics trafficking, and major offenses such as federal bank robberies, interviews, interrogations, and the apprehension of federal fugitives.

2. This affidavit is made in support of criminal complaint charging YOLANDA RAMOS ("RAMOS") with possession, and aiding and abetting possession, with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2.

3. This affidavit is based on my own investigation, and on information provided by members of the FBI Safe Streets Task Force and Drug Enforcement Administration (DEA). I have also relied on reports of investigations that I have prepared or that were prepared by other law enforcement agents, documents provided pursuant to a subpoena, and public and/or law enforcement databases. The facts outlined are intended only to demonstrate probable cause to support a criminal

complaint and do not represent the totality of the information that I am aware of through this investigation.

ORIGINAL SEARCH WARRANT PROBABLE CAUSE

4. On October 3, 2025, I applied for a federal search warrant for 11800 Glass House Lane, Apartment 1356 Orlando, Florida ("the TARGET PREMISES"). The application was granted, and a search warrant was issued by U.S. Magistrate Judge Robert M. Norway of the U.S. District Court for the Middle District of Florida, under docket number 6:25-mj-2099.

5. As explained in the application for that search warrant, in approximately October 2024, PERSON-1 became a subject of an investigation into a drug trafficking organization ("DTO") by the FBI in San Juan, Puerto Rico. Due to PERSON-1's connections with the Middle District of Florida, as described below, the FBI in San Juan shared this information with the FBI in Orlando, Florida.

6. Criminal history for PERSON-1 was queried through the National Crime Information Center and initially identified PERSON-1 as having an active warrant, since July 14, 2020, for conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). PERSON-1 was indicted with eight other co-conspirators, to include his brother, in the Middle District of Florida. Prior to PERSON-1's arrest on October 3, 2025, he was the only outstanding defendant according to court documents under U.S. District Court case 8:20-cr-216. That case is not under seal and court records available to the public identify PERSON-1 as a defendant.

7. On February 18, 2025, HSI agents conducted a border search of a subject associated with the aforementioned DTO while arriving at the Luis Munoz Marin International Airport from Punta Cana, Dominican Republic. Pursuant to border search authority, the subject's cell phones were extracted for a search of the data contained within. These cell phone extractions were subsequently provided to FBI agents in San Juan for their investigation.

8. The cell phone extractions identified a phone number ending in 1610 ("x1610") under a name associated with PERSON-1.

9. On February 27, 2025, T-Mobile provided responsive records for x1610 pursuant to a subpoena for subscriber information. Subscriber records provided a service and billing address on Lake Berkely Drive, Kissimmee, Florida. The subscriber was listed as RAMOS. Although not legally married, a cooperating witness and other intelligence has indicated RAMOS and PERSON-1 are in a martial-type relationship. On September 9, 2025, subscriber records were again obtained for x1610, which confirmed the same subscriber, service, and billing address.

10. The subscriber address for x1610 was queried through the Florida Department of State and identified the company Imperium Exotic Frenchies LLC registered to the same address in approximately January 2025. A man and a woman (ALIAS-1 and ALIAS-2) are listed as authorized persons for the company.

11. On approximately September 24, 2025, digital records for a Pennsylvania driver's license were obtained for ALIAS-2. A comparison of the

Pennsylvania license for ALIAS-2 with the Florida driver's license for RAMOS revealed them to be the same person. Additionally, the birth date used by ALIAS-2 and RAMOS are both the same. Based on the foregoing, I believe ALIAS-2 to be an alias of RAMOS.

12. A review of records from Florida's Driver and Vehicle Information Database ("DAVID") identified a driver's license obtained on January 21, 2025, under the name of ALIAS-1 with a date of birth in 1989 and a Social Security Account Number ("SSAN") of xxx-xx-9364. Photographs from the DAVID page revealed the individual using ALIAS-1's name, date of birth, and SSAN to actually be PERSON-1.

13. A review of records from Puerto Rico also identified a license under the full name of ALIAS-1 with the same above-mentioned date of birth and SSAN. Again, the photograph from this driver's license revealed the individual using ALIAS-1's name, date of birth, and SSAN to actually be PERSON-1.

14. The full name of ALIAS-1, his birth date, and Social Security number, as used by PERSON-1 as an alias, were identified to belong to a different individual with a driver's license in in Massachusetts. The photograph of the actual person with ALIAS-1's name and Massachusetts driver's license bears no resemblance to PERSON-1 and is clearly a different individual.

15. Also identified through driver's license records from Puerto Rico was a 2022 Ford Edge, registered to PERSON-1 through his fraudulent Puerto Rican license in the name of ALIAS-1.

16. On September 9, 2025, financial records from Banco Popular de Puerto Rico were obtained pursuant to a grand jury subpoena. These records identified a loan applied for under the name of ALIAS-1 and for a 2022 Ford Edge bearing the same VIN as the vehicle registered to PERSON-1 under his fictitious Puerto Rican license in the name of ALIAS-1.

17. Of note, a mailing address in Humacao, Puerto Rico is present on the loan documents with Banco Popular de Puerto Rico. Loan documentation also indicates the loan application was executed on March 20, 2025, in Puerto Rico. An "Automobile Loss or Claim Statement" was filed on July 29, 2025, indicating the vehicle may have been repossessed for nonpayment.

18. According to records obtained by grand jury subpoena on September 29, 2025, an individual using the name and identifiers of ALIAS-1 applied for and was granted a QuicksilverOne credit card through Capital One, National Association.

19. This card was applied for on March 20, 2025, through the internet utilizing IP address 172.59.19.31. On September 30, 2025, I conducted a query of the IP address through an online IP address search engine. Results indicate it is assigned to the geographic area of Puerto Rico.

20. Based on my training and experience, I am aware that IP addresses can be reassigned between customers at varying degrees of frequency. However, IP addresses are also constrained to certain geographic areas. This means the IP address would have very likely still been assigned in Puerto Rico on March 20, 2025, even if

it was assigned to a different customer when I ran the IP address query on September 30, 2025. Therefore, the application filed through the internet with Credit One appears to have been filed in Puerto Rico on March 20, 2025 – the same date PERSON-1 appears to have been in Puerto Rico obtaining the automotive loan from Banco Popular de Puerto Rico.

21. Furthermore, the mailing address provided on the Capital One application is the same mailing address in Humacao, Puerto Rico that PERSON-1 provided on the auto loan with Banco Popular de Puerto Rico.

22. On October 2, 2025, I reviewed responsive records from Banco Popular de Puerto Rico, produced in response to a grand jury subpoena, for financial accounts under the name of Jalisco, LLC. Jalisco, LLC is a corporation formed in Puerto Rico on January 30, 2020. PERSON-1 and RAMOS are listed as administrators for this company.

23. According to Banco Popular de Puerto Rico's records, as early as December 30, 2024, Jalisco, LLC's debit card was charged at the Glasshouse Orlando, the apartment complex where the TARGET PREMISES is located.

24. On October 2, 2025, I reviewed responsive records from Truist Bank, produced in response to a grand jury subpoena for financial accounts, under the name of Imperium Exotic Frenchies, LLC. As previously mentioned, PERSON-1 and RAMOS each are listed as an authorized persons for this business under the names of ALIAS-1 and ALIAS-2, respectively. Truist produced bank statements through June 30, 2025.

25. According to Truist's records, as recently as June 10, 2025, Imperium Exotic Frenchies, LLC's debit card was charged at the Glasshouse Orlando.

26. On October 2, 2025, the FBI inquired with the Glasshouse Orlando apartment complex about any apartments leased under the name of Yolanda RAMOS. The Glasshouse Orlando disclosed that Yolanda RAMOS is leasing 11800 Glass House Lane, Apt 1356 Orlando, Florida (the "TARGET PREMISES") and began the lease in approximately January 2025. RAMOS had also added to her lease an individual with a name derived from, or short for, ALIAS-1's name.

27. In sum, debit card transactions from Jalisco, LLC, with which RAMOS and PERSON-1 are both associated, align with RAMOS and PERSON-1 beginning residence at the Glasshouse Orlando in approximately January 2025. Additionally, financial records from Imperium Exotic Frenchies, LLC, with which RAMOS and PERSON-1 are also both associated, align with RAMOS and PERSON-1 continuing to maintain residence at the Glasshouse Orlando.

28. On October 2, 2025, I reviewed a written report and body camera footage from Orange County Sheriff's Office for a report of a stolen vehicle made by RAMOS in April 2025. In this report and footage, RAMOS files the report from the Glasshouse Orlando and provides her building number as 11800.

29. On October 3, 2025, at approximately 9:10 a.m., DEA Special Agents attempted to make contact at the TARGET PREMISES. DEA agents were successful in making contact with an elderly Hispanic female at the residence. The DEA agent conducted a ruse in an attempt to identify the occupants and locate

PERSON-1. The elderly Hispanic female claimed to not speak English. After the ruse was attempted, uniformed FBI agents attempted to make contact at the same door that the DEA agents attempted moments earlier, but no one answered the door. A Spanish speaking FBI agent attempted to communicate with the residents to no avail. For approximately 30 minutes, contact was attempted but unsuccessful. Constant surveillance was conducted on the residence, and no one left or entered the TARGET PREMISES between the two attempts to make contact.

30. Additionally, FBI agents were able to contact a neighbor who resides at the apartment complex. The neighbor was shown a picture of PERSON-1 and advised she/he had seen the individual in the picture during the past week. The neighbor further advised she/he had seen the individual in the picture walking from the direction of the TARGET PREMISES.

31. Also on October 3, 2025, following contact with the aforementioned neighbor, FBI Special Agents spoke with staff at the Glasshouse Orlando and showed them pictures of both RAMOS and PERSON-1. The Glasshouse Orlando staff advised both pictured individuals were current residents of the TARGET PREMISES.

32. Then, at approximately 11:30 a.m., RAMOS, after speaking with DEA agents, gave the agents consent to enter the apartment to search for PERSON-1. Agents followed RAMOS and she unlocked and opened the door to the apartment. Once inside the apartment, agents observed PERSON-1 exit from a southwest bedroom. In the room from which PERSON-1 exited, agents observed a backpack

hanging from the bedroom door that was unzipped. A firearm was seen in plain sight from the open backpack. PERSON-1 was handcuffed and placed into DEA custody. The firearm was seized as evidence and for public safety.

RESULTS OF SEARCH WARRANT EXECUTION

33. Upon execution of the search warrant for the TARGET PREMISES, FBI agents located 22 kilo-size "bricks" of suspected cocaine in the master bedroom closet. As pictured below, two of the "bricks" of cocaine were found in plain view in a laundry hamper and the remaining were found in a duffel bag.






34. Also located in close proximity to the cocaine in the master bedroom closet were approximately two rifles and five pistols and a large collection of ammunition. Notably, one pistol was in plain view and readily accessible in an open backpack. Over $300,000 in cash was found in the master bedroom dresser drawer and nightstand. Pictures of these items follow.









35. One of the "bricks" was field tested, yielding a positive result for cocaine. Further, the "bricks" were otherwise consistent in appearance with cocaine packaged for distribution in kilogram amounts.

36. Again, as noted above, the Glasshouse Orlando identified RAMOS as leasing the TARGET PREMISES. Additionally, staff had identified RAMOS by a photograph as being the occupant of the TARGET PREMISES. Furthermore, financial records for two companies with which RAMOS is associated, either under her true name or alias (ALIAS-2), identify payments being made to the Glasshouse Orlando. RAMOS also filed a stolen vehicle report with the Orange County Sheriff's Office in April 2025 and provided her address as building 11804 at the Glasshouse Orlando.

37. On October 3, 2025, an FBI agent served an administrative subpoena to The Glasshouse Orlando for renter information on the TARGET PREMISES. The Glasshouse Orlando subsequently provided the FBI with a full copy of the apartment lease contract. Yolanda RAMOS and Glass House Condo, LLC were the only two parties listed on the contract. RAMOS was the only individual to sign as a "resident" on the contract and all accompanying addendums when it was originally signed on January 6, 2025. RAMOS likewise was the only insured party named on an evidence of property insurance form. On January 20, 2025, RAMOS added an individual with a name derived from, or short for, ALIAS-1's name.

38. A diverse collection of evidence was located during the search warrant, establishing that RAMOS lived at the TARGET PREMISES and kept property there. Specifically:

a. Truist bank statements for the business account Imperium Exotic Frenchies, LLC;

b. a Truist business debit card bearing the name of ALIAS-2 and "Imperium Exotic Frenchies" attached by elastic band to what appeared to be a ledger of financial transactions (found in the master bedroom);

c. a Duke Energy bill addressed to "Yolanda Ramos" and bearing the address of the TARGET PREMISES;

d. titles for two vehicles registered to RAMOS (found in the master bedroom);

e. a FedEx shipping label bearing the name "Yolanda Ramos" (found in the master bedroom nightstand with cash);

f. Numerous USPS boxes bearing the name "Yolanda Ramos";

g. Architectural plans for a home with the apparent customers listed on the top right corner as "Yolanda Ramos" and a name derived from, or short for, PERSON-1's name; and

h. Numerous USPS boxes bearing the name "Yolanda Ramos" and the address for the TARGET PREMISES.

39. Based on the foregoing, there is probable cause to believe that in the Middle District of Florida, RAMOS possessed, and aided and abetted the possession, with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2.

Respectfully submitted,

Charles Scott Archer
Special Agent
FBI

This affidavit was sworn before me
this ___4th____ day of October, 2025.

Honorable Robert M. Norway
United States Magistrate Judge