FILED IN OPEN COURT
JACKSONVILLE, FLORIDA
7.29.2026
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 3:25-cr-219-JEP-MCR

SAMUEL ALEXIS PENA MENDEZ
a/k/a "Victor Benjamin Diaz Hernandez"

# PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, SAMUEL ALEXIS PENA MENDEZ, and the attorney for the defendant, Vanessa L. King, Esq., mutually agree as follows:

## A. Particularized Terms

### 1. Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Four of the indictment. Count One charges the defendant with conspiracy to distribute, and possess with intent to distribute, five kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 851. Count Four charges the defendant with possession, and aiding and abetting the possession, of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

2. Mandatory Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum sentence of fifteen years' imprisonment and a maximum of life imprisonment, fine of not more than $20,000,000, or both imprisonment and a fine, a term of supervised release of not less than ten years up to life, and a mandatory special assessment of $100 due on the date of sentencing. A violation of the terms and conditions of supervised release carries a maximum sentence of not more than five years' imprisonment, as well as the possibility of an additional term of supervised release.

Count Four carries a mandatory minimum penalty of not less than twenty-five years of imprisonment and a maximum of life imprisonment (the term of imprisonment as to this count must be consecutive as to any other sentence), a fine of not more than $250,000, or both a term of imprisonment and a fine, a term of supervised release of not more than five years, and a mandatory special assessment of $100 due on the date of sentencing. A violation of the terms and conditions of supervised release carries a maximum sentence of not more than five years' imprisonment, as well as the possibility of an additional term of supervised release.

The cumulative penalties for Counts One and Four are a mandatory minimum term of imprisonment of forty years (twenty-five of those years must be consecutive to any other sentence), a maximum of two life terms of imprisonment, a fine of not more than $20,250,000, a term of supervised release of not less than ten years, and a mandatory special assessment of $200 due on the date of sentencing. A violation of the terms and conditions of supervised release carries a maximum

sentence of not more than 10 years' imprisonment, as well as the possibility of an additional term of supervised release.

3. *Alleyne v. United States* and *Apprendi v. New Jersey*

As to Count One, under *Alleyne v. United States*, 570 U.S. 99 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the defendant is subject to a mandatory minimum sentence of fifteen years' imprisonment and a maximum sentence of life imprisonment because the following facts have been admitted by the defendant and are established by this plea of guilty:

a. the conspiracy involved five kilograms or more of a mixture and substance containing a detectable amount of cocaine; and

b. before the defendant committed the offense charged in Count One, he had a prior final conviction for a serious violent felony, specifically, possession of a firearm in furtherance of a drug trafficking crime, on or about September 22, 2014, for which he served more than 12 months of imprisonment.

As to Count Four, the defendant is subject to a mandatory minimum sentence of twenty-five years' imprisonment, which must be served consecutive to any other sentence, and a maximum sentence of life imprisonment because the following facts have been admitted by the defendant and are established by this plea of guilty: before the defendant committed the offense charged in Count Four, he had a prior final conviction for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), on or about September 22, 2014.

4. Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

| | |
|---|---|
| One: | two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess with intent to distribute and to distribute cocaine, a Schedule II controlled substance; |
| Two: | the defendant knew the unlawful purpose of the plan and willfully joined in it; and |
| Three: | the object of the unlawful plan was to possess with intent to distribute and to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine. |

The elements of Count Four are:

| | |
|---|---|
| One: | the defendant committed the drug trafficking crime charged in Count Three of the indictment; and |
| Two: | the defendant knowingly possessed, or aided and abetted the possession of, a firearm in furtherance of the drug trafficking crime, as charged in the indictment. |

5. Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Two, Three, and Six, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

6. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States

will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's

nominees. The assets to be forfeited specifically include, but are not limited to, the following:

a. approximately $296,282 in U.S. currency;

b. an Anderson Arms multi-caliber pistol bearing serial number 34528643;

c. an Anderson Arms multi-caliber pistol bearing serial number 34528641;

d. a Glock .40 caliber pistol bearing serial number BSRN443;

e. a Glock 9mm caliber pistol bearing serial number BBAB717;

f. a Glock 9mm caliber pistol bearing serial number CCBX613;

g. a Glock 9mm caliber pistol bearing serial number AFUB434; and

h. a Glock GmbH, Model: 19X, 9x19mm (SN: BVUU460) with slide and barrel (SN: BXZE400);

i. Magazines and ammo seized from the Glasshouse apartment;

j. A Rolex Sky-Dweller 18k Everose Gold Oystersteel Jubilee Blue Dial, Model 336935 (SN: 9R895097); and

k. A 2019 Jeep Grand Cherokee, VIN #: 1C4RJEAG7KC789553, titled to Yamilys Karleen Pena Sanchez and Yolanda Ramos,

all of which were seized from the defendant on October 3, 2025. The currency represents proceeds the defendant obtained from his participation in the charged drug conspiracy, and the watch was purchased with money obtained from the charged drug conspiracy. Further, the firearms, magazines, ammunition and Jeep Grand Cherokee all facilitated the charged drug conspiracy, and the firearms, magazines, and ammunition were involved in the offense charged in Count Four.

The defendant further agrees to the administrative forfeiture of the five other Rolex watches and twelve jewelry items seized from the Glass House apartment on October 3, 2025 because they were purchased with proceeds obtained from Title 21 offenses. The defendant agrees that this provision provides him with actual notice of the administrative forfeiture of these assets, and waives the right to receive notice of any subsequent administrative forfeiture of these assets.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the

abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

**B. Standard Terms and Conditions**

1. Restitution, Special Assessment, and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is

due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the

defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the

concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 25th day of June, 2026.

GREGORY W. KEHOE
United States Attorney

SAMUEL ALEXIS PENA MENDEZ
Defendant

LAURA COFER TAYLOR
Assistant United States Attorney

VANESSA L. KING
Attorney for Defendant

MICHAEL J. COOLICAN
Assistant United States Attorney
Chief, Jacksonville Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 3:25-cr-219-JEP-MCR

SAMUEL ALEXIS PENA MENDEZ

## PERSONALIZATION OF ELEMENTS

**As to Count One:**

1. Do you admit that beginning no later than December 13, 2024, and continuing through at least October 3, 2025, in the Middle District of Florida, you and at least one other person in some way agreed to try to accomplish a shared and unlawful plan to possess with intent to distribute and to distribute cocaine, a Schedule II controlled substance?

2. Do you admit that you knew the unlawful purpose of the plan and willfully join in it?

3. Do you admit that the object of the unlawful plan was to possess with the intent to distribute and to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine?

4. Do you admit that, prior to committing this offense, you had a prior final conviction for a serious violent felony, specifically, for possession of a firearm in furtherance of a drug trafficking crime, on September 22, 2014? Do you admit that you served more than 12 months in prison for that offense?

**As to Count Four:**

1. Do you admit that you knowingly possessed, and aided and abetted the possession of, with intent to distribute, five kilograms or more of cocaine, as charged in the Count Three of the indictment?

Defendant's Initials S.P.M.

2. Do you admit that, in furtherance of that drug trafficking crime, on October 3, 2025, in the Middle District of Florida, you possessed, and aided and abetted the possession of, firearms, including five Glock pistols and two privately manufactured pistols?

3. Do you admit that, prior to committing this offense, you had a prior final conviction for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), on September 22, 2014?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 3:25-cr-219-JEP-MCR

SAMUEL ALEXIS PENA MENDEZ

## FACTUAL BASIS

On September 10, 2025, officers with U.S. Customs and Border Protection conducted a lawful inspection of a cargo container, which had arrived in Jacksonville, Florida, by sea from San Juan, Puerto Rico. Inside the container were, among other things, multiple pallets of concrete slabs or pavers. Encased and hidden inside the slabs were metal containers. Those containers, in turn, housed numerous sealed, kilo-size "bricks" of a white powder, consistent in appearance with cocaine. In total, federal investigators located and seized 883 bricks hidden in the concrete slabs. Laboratory testing later established that the seizure consisted of approximately 887 kilograms of cocaine.

Shipping records showed that the concrete slab shipment weighed approximately 20,322 pounds and was shipped by a company called Quality Home Improvements. The records listed "Maria Crespo" as the point of contact for that company and included a cellphone number (the Crespo phone) and email address (the Crespo email account). Investigators later determined that Yolanda RAMOS, the defendant's co-conspirator and romantic partner, used the alias "Maria Crespo"

while facilitating the shipment of the hidden cocaine from Puerto Rico to the Middle District of Florida.

Reviewing records of Quality Home Improvements shipments from San Juan to Jacksonville, investigators identified four prior shipments. The first shipment was arranged on December 13, 2024. Each of the four prior shipments purported to contain concrete slabs, pavers, or stone products, weighing 12,515 lbs., 8,892 lbs., 13,949 lbs., and 12,622 lbs., respectively. Shipping records again identified "Maria Crespo" as a point of contact and listed the Crespo phone number and Crespo email address. For each shipment (including the September 2025 shipment), "Maria Crespo" dispatched a truck to Jacksonville to pick up the load of concrete slabs for delivery in the Orlando, Florida, area.

Certain telephone calls to and from the Crespo phone with "Maria Crespo" were recorded. Federal agents who are familiar with the RAMOS's voice have listened to those recordings and recognize "Maria Crespo's" voice as RAMOS's.

Further, a federal agent obtained a search warrant for the contents of the account associated with the Crespo email address. Reviewing the contents of that account, an investigator located email correspondence to and from "Maria Crespo," but also a drug ledger, the draft of a letter from RAMOS, and Internet search history that included a search for a particular apartment complex on Glass House Lane in Orlando Florida. RAMOS is the lessee of a three-bedroom apartment (the Glass House apartment) in that specific complex.

Around the time of the cocaine seizure in Jacksonville, Samuel Alexis PENA MENDEZ, had been a fugitive for over five years. In 2020, he was charged by a federal grand jury in the Middle District of Florida with conspiracy to distribute 500 grams or more of cocaine. In that previous case, PENA MENDEZ had been indicted along with eight co-conspirators. That indictment was not under seal and was publicly available. All of PENA MENDEZ's co-conspirators (including his brother) had been arrested in that earlier case.

PENA MENDEZ was RAMOS's long-time paramour, and RAMOS helped him avoid arrest. In January 2025, RAMOS amended her lease to add "Victor Hernandez" as a new resident of the Glass House apartment. This new resident signed the lease amendment "Victor Diaz." PENA MENDEZ has used the alias "Victor Benjamin Diaz Hernandez" and fraudulently obtained driver's licenses under that name in both Florida and Puerto Rico. Security camera footage captured both RAMOS and PENA MENDEZ frequently at the Glass House apartment complex. An apartment complex employee confirmed that both lived in the Glass House apartment.

On October 3, 2025, federal agents were conducting surveillance at the Glass House apartment because they correctly assessed that fugitive PENA MENDEZ was living there. RAMOS was present at the Glass House complex and permitted agents to enter the apartment to look for PENA MENDEZ. Inside, the agents found PENA MENDEZ and a 72-year-old member of his family. They arrested PENA

MENDEZ pursuant to the arrest warrant issued in connection with the 2020 indictment.

That same day, an agent obtained a lawful search warrant for the Glass House apartment. In the apartment's master bedroom closet, agents located 22 kilo-size bricks of cocaine. They also located, among other things, five Glock pistols, two privately manufactured pistols, magazines, ammunition, a drug ledger, various packages and a utility bill addressed to RAMOS at the apartment, titles to two vehicles registered to RAMOS, two money counters, and approximately $296,282 in cash. Agents also located a Rolex Sky-Dweller watch, which was purchased on or about April 17, 2025, for $68,500 (with $53,000 of the purchase price being paid for with cash), along with five other Rolex watches (combined appraised value of approximately $80,000) and high-end jewelry (combined appraised value of $104,000).

In the apartment complex parking garage, agents also located, lawfully seized, and conducted an inventory search of a Jeep Grand Cherokee registered to RAMOS. They located nine kilo-size bricks of cocaine inside a plastic container that was on the back seat of the SUV.

Firearms are a common tool of drug traffickers (like PENA MENDEZ and RAMOS), who possess them to facilitate drug trafficking by protecting their drugs and drug proceeds from other criminals. In this case, firearms and ammunition were found in the bedroom closet where the kilograms of cocaine were stored.

Taking into account the drugs included as part of the five Quality Home Improvement shipments from Puerto Rico to Jacksonville, as well as the drugs found in the Glass House apartment and RAMOS's SUV, PENA MENDEZ was a participant in a conspiracy whose members were responsible for trafficking at least 2,800 kilograms of cocaine.