**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.

YOLANDA RAMOS,
a/k/a "Yolanda Delvalle,"
a/k/a "Maria Crespo,"
Defendant.
_______________________________/

Case No. 3:25-cr-00219-JEP-PDB

# DEFENDANT YOLANDA RAMOS'S REPLY TO THE UNITED STATES' OPPOSITION (DOC. 146) TO HER MOTION TO SUPPRESS (DOC. 128)

**TO THE HONORABLE COURT:**

**HERE COMES NOW** Defendant **YOLANDA RAMOS**, with leave of Court (Doc.153), and replies to the United States' Opposition (Doc. 146) as follows:

## A. Ms. Ramos Has Standing Under the Government's Own Record.

The Opposition concedes Ms. Ramos "was the lessee." Doc. 146 at 2. Standing follows the right to exclude: "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude." Byrd v. United States, 584 U.S. 395, 405 (2018) (quoting Rakas v. Illinois, 439 U.S. 128, 144 n.12 (1978)). The Opposition's own case recognizes that interest in "an unrestricted right of occupancy or custody and control of the premises," and denied it where the defendant "did not own the premises searched, nor did he rent them." United States v. Baron-Mantilla, 743 F.2d 868, 870

(11th Cir. 1984) (quotation omitted). And "an individual is not limited to one place of business," United States v. Chaves, 169 F.3d 687, 691 (11th Cir. 1999); per the Opposition, her business "operated there." Doc. 146 at 5. It is the Government that wants it both ways: its affiant swore to records showing her "continuing to maintain residence" there, Doc. 128, Ex. A ¶ 34 (Bates 000440); its agents entered with her permission, Doc. 146 at 3; and they found her mail and bank cards inside. Ex. E, Serial 51 (Bates 000493). The Jeep and F-250 are registered to her, Ex. G ¶ 2 (Bates 000003), and their seizure invaded her "possessory interests," United States v. Jacobsen, 466 U.S. 109, 113 (1984)—unlike United States v. Pena, 2023 WL 8258541 (D.N.M. Nov. 29, 2023), where the owner had lent the car out. Doc. 146 at 7.

**B. The "Protective Sweep" Exceeded Buie.**

Buie's first prong reaches "closets and other spaces immediately adjoining the place of arrest," Maryland v. Buie, 494 U.S. 325, 334 (1990)—not "all the rooms in the apartment adjoining the hallway." Doc. 146 at 9. Beyond that, the Government must show "articulable facts" that "the area to be swept harbors an individual posing a danger to those on the arrest scene." Buie, 494 U.S. at 334. Agents had watched the door for "nearly two hours," Doc. 146 at 9; Ex. G ¶¶ 5, 7, 10 (Bates 000003–05), and found inside exactly whom they expected: Peña Méndez and "his previously mentioned family member." Doc. 146 at 4. Surmise that "someone" helped him,

Doc. 146 at 9, is no fact; "the officers' lack of information cannot justify the warrantless sweep . . . ." Chaves, 169 F.3d at 692. Above all, a sweep extends "only to a cursory inspection of those spaces where a person may be found." Buie, 494 U.S. at 335. No one hides in a backpack, yet DEA first reported that "[t]he bag was opened." Ex. G ¶ 10 (Bates 000005); see Arizona v. Hicks, 480 U.S. 321, 324–25 (1987). And the FBI "held the location" for two and a half hours, Ex. B, Serial 46 (Bates 000401), long after any sweep must end. Buie, 494 U.S. at 335–36.

**C. The Opposition Applies Only Half of the Independent-Source Test.**

The Opposition would excise the sweep and stop. Doc. 146 at 10. Its own authority continues: if probable cause survives, "the second thing we do is determine whether the officer's decision to seek the warrant was 'prompted by' what he had seen during the arguably illegal entry." United States v. Noriega, 676 F.3d 1252, 1260 (11th Cir. 2012); Murray v. United States, 487 U.S. 533, 542 (1988). "That is a question of fact," on which Noriega remanded. 676 F.3d at 1263. Chaves admitted evidence only after finding "nothing in the record to suggest that the police officers sought the warrant because of what they saw." 169 F.3d at 693. Here, the Government's own report records that "the FBI intended on conducting a search warrant at the apartment where he was arrested based on the fact a handgun was already located in plain view." Ex. G ¶ 13 (Bates 000006). The DEA supervisor's earlier remark that he "intended on applying for a search warrant," Ex. G ¶ 7 (Bates

000004), at most creates a fact dispute. The Government offers no declaration, and assurances fail "[w]here the facts render those assurances implausible." Murray, 487 U.S. at 540 n.2. At a minimum, the question must be decided on evidence.

Excision also proves too much. Paragraphs 39 and 41 are the affidavit's only firearm facts and the sole support for the firearm element of the 18 U.S.C. § 922(n) offense and Attachment B's authority to seize "firearms, ammunition, and firearms accessories." Ex. A (Bates 000430, 000441–43, 000454). Strike them, as the Government proposes, and nothing supports seizing any firearm.

**D. The Franks Showing Rests on the Government's Own Reports.**

The Opposition says she "points to nothing in the affidavit as false." Doc. 146 at 14. Paragraph 39 swears agents saw "a backpack hanging from the bedroom door that was unzipped" and a firearm "in plain sight from the open backpack." Ex. A ¶ 39 (Bates 000441–42). The Government's records tell three other stories: a post-arrest sweep where a backpack "hanging on the bathroom door handle" "was opened," Ex. G ¶ 10 (Bates 000005); a "correction" nineteen days later, approved by the agent who found the gun, Ex. G (Bates 000001); and an FBI inventory placing its only backpack Glock "in a black backpack on closet floor." Ex. B, Serial 46 (Bates 000402). Even the Opposition places it in "a protective sweep of the apartment that followed" the arrest, Doc. 146 at 4—a sweep the affidavit omits. These accounts, with her declaration (Ex. R), are the "offer of proof" Franks

requires. Franks v. Delaware, 438 U.S. 154, 171 (1978). Recklessness need not be shown "by direct evidence"; it "is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself." Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997) (quotation omitted). The sweep, the firearm facts' only source, is that critical. The Opposition omits Franks's next sentence: "if the remaining content is insufficient, the defendant is entitled . . . to his hearing." 438 U.S. at 172.

**E. No Exception Reaches the Vehicles.**

Each case the Opposition cites for seizing a vehicle as evidence, Doc. 146 at 15–16 & n.2, involved one that was itself stolen, fitted with stolen tires, used in a robbery, or forfeitable contraband.[1] The Jeep and F-250 were none of these. Nor was this an inventory, which "must not be a ruse for a general rummaging," Florida v. Wells, 495 U.S. 1, 4 (1990): the Opposition identifies no policy, and the FBI recorded "[a] quick search . . . for valuables and evidence" three days before any inventory. Ex. D, Serial 43 (Bates 000343, 000345–50). The probable-cause facts offered under United States v. Lanzon, 639 F.3d 1293, 1299–1300 (11th Cir. 2011)—keys, drugs, guns, shipping papers—came from the apartment search, Doc.

---

[1] United States v. Forrest, 620 F.2d 446, 455 (5th Cir. 1980) (altered VINs); Doc. 146 at 15–16 (Mitchell; stolen tires); United States v. Patterson, 150 F.3d 382, 386 (4th Cir. 1998) ("used in a robbery"); Florida v. White, 526 U.S. 559, 561, 565 (1999) (car used to deliver cocaine; "the vehicle *itself* was contraband").

146 at 14, 17, and fall with it. Wong Sun v. United States, 371 U.S. 471, 484 (1963). Her alleged role in a September shipment proves nothing about her cars on October 3.

**F. The Detention, the Statements, and the iPhone.**

The Opposition admits, but never justifies, that agents "detained the defendant in the apartment while an affiant agent completed and submitted an application." Doc. 146 at 4. No warrant supplied "categorical authority to detain incident to the execution of a search warrant," Bailey v. United States, 568 U.S. 186, 199 (2013), and no probable cause existed: she was arrested "[b]ased upon probable cause established through the search of the apartment." Ex. E, Serial 49 (Bates 000473). Detention "for custodial interrogation—regardless of its label—" requires probable cause, Dunaway v. New York, 442 U.S. 200, 216 (1979), so her statements while detained are fruits whether or not "coerced," Doc. 146 at 19, and "the burden of showing admissibility rests, of course, on the prosecution." Brown v. Illinois, 422 U.S. 590, 604 (1975). After she "invoked her right to counsel," agents "inquired" and "asked," Ex. E, Serial 51 (Bates 000492–93), contrary to Edwards v. Arizona, 451 U.S. 477, 484–85 (1981); and impeachment use awaits a voluntariness ruling. See Mincey v. Arizona, 437 U.S. 385, 398 (1978). A promise of non-use is not an

order.[2]

**G. Davis Does Not Excuse Deliberate Conduct.**

Davis excuses only "searches conducted in objectively reasonable reliance on binding appellate precedent." Davis v. United States, 564 U.S. 229, 232 (2011). No precedent, statute, or warrant authorized opening the bag, occupying the apartment, detaining Ms. Ramos, or searching the vehicles—deliberate acts, capped by a revised report, for which "the deterrent value of exclusion is strong." Id. at 238. Nor can good faith save the warrant: it "does not come into play" where a warrant issues "in reliance on information obtained during a prior illegal warrantless search." United States v. Parker, 600 F. Supp. 2d 1251, 1259 (M.D. Fla. 2009) (citing United States v. McGough, 412 F.3d 1232, 1236–40 (11th Cir. 2005)).

**WHEREFORE**, Ms. Ramos respectfully requests that the Court grant the Motion (Doc. 128) or receive evidence on it, including under Franks, at the October 16, 2026 hearing (Doc. 149); and, in all events, bar any use of the iPhone and its fruits, and of her post-invocation statements absent a voluntariness ruling.

---

[2]On "attribution," Doc. 146 at 18 n.3: the report attributing 407-861-9193 to Ms. Ramos, though describing a September 29 call, is headed "Investigation on 10/03/2025" (the seizure date) and was written October 17 by the agent who logged the iPhone that day. Ex. L, L-1 (Bates 000531–32).

Respectfully submitted,

***/s/ Edwin Javier Prado-Galarza***
Florida Bar No. 1008115
Prado Law Offices LLC
964 Osceola Parkway
Kissimmee FL 34746
(787) 977-1411/ (407)420-7926
pradolaw10@gmail.com

**CERTIFICATE OF SERVICE.**

**I CERTIFY** that on October 13th , 2026, I filed this Reply through CM/ECF, which will serve all counsel of record.

***/s/ Edwin Javier Prado-Galarza***